ALBERT N. BROWN *vs.* The MORRIS CANAL and BANKING
COMPANY.

1. On an application to the board of chosen freeholders under the act
entitled "An act to authorize the owners of lands on tide waters, to build
wharves in front of the same," (*Nix. Dig.* 871) the chosen freeholders have
no power to examine into and decide upon the applicant's title to the land.

2. If proof is made and filed with their clerk, that the notice required
by the act was given according to law, the only question they can ex-
amine and decide is, whether the dock, wharf, or pier applied for will in-
terfere injuriously with the public rights of navigation.

3. The board of freeholders have no power to compel the attendance of
parties or witnesses, nor power to swear and examine the latter, should
they attend voluntarily, even upon the public question submitted to them.

4. On a *certiorari* to review the proceedings of the board of chosen free-
holders in granting a license to build a wharf, the Supreme Court may ex-
amine into and decide all questions involved in the decision of the free-
holders.

5. Whether the Supreme Court can, in such case, examine into and de-
cide upon the title to the shore where the wharf is proposed to be built.
*Query.*

6. The rule, that to make proceedings of a special statutory character
valid, a jurisdictional fact must appear on their face, does not apply to pro-
ceedings of a legislative character had before a body invested with a power,
the exercise of which rests in a sound discretion.

In error to the Supreme Court

Albert N. Brown applied to the board of chosen freeholders
of Hudson county for a license to build a wharf in front of
land, to which he claimed title, lying on the shore of New
York bay. The chosen freeholders granted the license, and the
Morris Canal and Banking Company, who also claimed title
to the same land, brought a *certiorari* to remove the proceed-
ings to the Supreme Court for review. The only question
presented to that court for consideration was, whether Brown
was the shore-owner, and, as such, authorized to receive the
license under the provisions of the act which regulates the
mode of making such improvements.

The Supreme Court set aside the license, upon the
ground that the applicant was not the shore-owner. Brown

brought a writ of error removing the proceedings to this court.

*1. W. Scudder* and *Zabriskie*, for plaintiff in error.

*Frelinghuysen* and *Bradley*, for defendants.

The opinion of the court was delivered by

WHELPLEY, J.  Albert N. Brown, claiming to be the owner of a lot of land in the county of Hudson, bounding upon high water mark in the bay of New York, obtained from the board of chosen freeholders of that county a license to build a wharf in front of his lot, extending beyond low water mark.  His application was made under the act of March 18th, 1851, entitled, "An act to authorize the owners of lands upon tide waters to build wharves in front of the same." Upon a writ of *certiorari*, sued out by the Morris Canal and Banking Company, claiming to be the owners of the same shore, the Supreme Court have declared the license granted to Brown void, upon the ground that he was not the shore-owner at that place, and could not legally apply for the license.

The court held that Brown was bound to prove before the freeholders, to their satisfaction, that he was shore-owner at that place, and that if the evidence upon which the freeholders acted did not prove, to the satisfaction of the Supreme Court, such ownership, the power existed in the court, in the proceeding then before them, to declare the license void ; and proceeded to examine certain documents and allegations which were before the freeholders upon the hearing of the application, and held that they did not show, to the satisfaction of the court, that Brown was such shore-owner ; that the burthen of proof lay upon him, and that inasmuch as ownership of the shore was a jurisdictional fact, the license for want of that ownership was void.

All these matters were directly involved in the decision of the case, although it seems, from the course of the argument in this court, that the power of the court to make that decision in the cause was not questioned, indeed it has not been disputed or denied by the counsel in this court, the argument of the plaintiff in error having proceeded upon the assumption that the power existed, although it had been erroneously exercised upon the facts as they appeared.

Whether this power exists in the mode in which it has been exercised, depends upon the true construction of the act. Manifestly the main, if not only object of the act, was to avoid the necessity of special applications to the legislature for permission to build wharves in front of lands bordering upon tide waters, and to transfer the right to grant or refuse such applications from the legislature to another body, political and local in its constitution and character; to delegate to it the protection of the public right of navigation.

The board of chosen freeholders, being a body elected by the people to take care of the public rights and interests of the county, seemed best adapted to guard these rights.

The mischief designed to be remedied, and the remedy provided, both clearly show that it was not the intention to create a legal tribunal for the settlement and determination of private rights, or for the trial of title to lands between conflicting claimants.

It will be seen, by a careful examination of the several provisions of the act, that the mode of proceeding and powers conferred upon the board are legislative, rather than judicial.

They are to proceed, as a body, at once to grant or refuse the permission applied for, or they may appoint a committee to examine the premises and report, and may, without further examination, adopt the report of the committee, if satisfied by it, that the granting of the application will not injuriously interfere with the public right

of navigation, or they may grant the application in a modified form.

Their powers are ample to enable them to protect the public right from injury, but entirely inadequate for the trial of title to lands, either on documentary or parol evidence.

Their only power of bringing parties before them who may desire to litigate, is to require proof to be filed of the public notice required by the act having been given, as therein prescribed. They have no process to compel the attendance of parties or witnesses, or to swear and examine the latter, should they attend voluntarily, even upon the public question submitted to them. The proceedings before us in this case, the unverified maps, the unauthenticated memoranda of loose conversations, the testimony of witnesses given upon honor, not oath, the unproved title of the plaintiff in error, on which the freeholders assumed to act, all show the anomalous character of the whole proceeding, if it be assumed that the board had the right to decide the matter of title to the shore at the point in question. The further fact that the Supreme Court have in this very case decided (granting their jurisdiction), without one syllable of legal evidence before them, that Brown is not the legal owner of the shore in question—for it needs no argument to show that if the freeholders had no power to verify documents or examine witnesses under oath, that all that appeared before them was in no higher sense evidence than the proceedings of a public meeting to be found in a daily paper—further show the absurdity of giving to the act a construction warranting the trial of title to lands. Indeed it is clear that the only legal evidence the board have a right to require is an affidavit of the publication of the proper notices, which must be filed before they proceed. When that is done, they may proceed to grant the license by default without examination (unless objection be made) if the improvement applied for shall not appear to them to

interfere with the public right of navigation, and to determine this upon their own view, if any examination is necessary.

Can it be. possi le that the legislature ever designed to confer upon the board of chosen freeholders of the county of Hudson the power to decide, for the purpose of determining whether they will hear an application for permission to l uild a wharf upon the construction of a deed, whether certain words in it create a base fee terminable on a certain contingency, or whether the applicant is a remainderman or tenant of the particular estate; whether, by the law of descents, he is entitled to the one-half or whole of the shore in question? To impute such an intention to the legislature is to charge them with want of ordinary intelligence.

There are two sections of the act which seem to give some countenance to the idea that the title of the applicant is necessarily drawn in question in the proceeding. They are the 5th and 9th sections of the act.

The 5th section provides that the license shall authorize and empower the applicant to erect the dock, and that, when erected, it shall be vested in said shore-owner, *in the same manner, and for the same estate,* and with the same limitation over in remainder, or otherwise, as the lands along the said tide waters in front of which the same were made may be.

This, upon a cursory reading, would appear to give the improvement to "the said shore-owner," that is, to him who made the application. But it is manifest that the whole scope of the section was to leave the question of the existence, quality, quantity, and duration of the estate of the applicant in the dock, entirely unaffected by the granting of the license, and to be dependent upon the title of the applicant, as it might actually be in the shore claimed by him. If he had an estate for life or years, he holds the dock of that estate. If an estate which may be terminated in a day, his right to the dock will continue

no longer; if he has no right, no estate in the lands, he will have none in the dock.

The 9th section provides that any proceedings under the act may be removed into the Supreme Court by *certiorari*, and be there examined and reviewed upon the law and facts and merits of the case, and that the court may, whenever they may deem it necessary, cause any matter of fact involved in any case to be tried by a jury in such county as they may see fit.

The question at once occurs, what is the object of this provision, if the main question, *i. e.* the title of the applicant, may not be examined and reviewed? What matter of fact can be involved in the case? The reply is obvious. The merits of the case may be examined, *i. e.* the merits of the case passed upon by the freeholders, both in law and fact, the propriety of their action upon any and every matter which they were competent to decide. The Supreme Court may determine whether, in their opinion, the improvement does in fact injuriously interfere with the common rights of navigation; whether the mode of the improvement is right; whether the shape of the dock is such as to conflict with the admitted rights of others; in fact any matter involved in the decision of the freeholders. They may decide these themselves, or they may leave the decision of them to a jury, by means of a feigned issue or a suit directed to be brought for the purpose of settling the rights involved in the case, whether public or private. Here surely, then, is verge and room enough for the operation of this section, without using it to draw an inference from, that the board of freeholders may settle abstruse questions of the law of real property.

The question then recurs, could the freeholders, in this case, have lawfully granted this license without legal proof of the title of Brown? Manifestly they could, both by the express words of the 4th section, and for this unanswerable reason, that unless they could, the act is a nullity; for they could not have proof made before them—proof

in the legal sense, I mean—because no mode is provided. They have none of the ordinary powers of a court to take proof; even the affidavit spoken of in the act must be sworn to before some officer competent to administer an oath ; they could not administer it.

If the power to take proofs and examine witnesses does not exist in this body—was not given to them by the legislature —can it be for one moment pretended that their action is void for want of it?   It is equally clear, that if the license may be granted without any proof, the sufficiency of what I called in this proceeding proof before them, is a matter entirely immaterial ; if none is necessary, any quantity more than that is sufficient.

The judgment of the Supreme Court, avoiding Brown's license because of want of sufficient legal proof before the freeholders, was, in this view of the case, entirely erroneous.   It cannot be avoided for any such reason by the Supreme Court on *certiorari.*   The granting of the license to Brown conferred on him no right to dock out, unless he was the owner of the shore, and is of no use to him, unless he is.   His license is conditional, dependent upon his title.

If he should undertake, under that license, to build the improvement authorized, neither the state or any person claiming under the public right of navigation could interfere to stop him, or claim the benefit of the completed improvement; but it would be no protection against the legal owner of the shore.

No proceeding under the act before the freeholders can, in any sense, settle the title to the shore, or divest it from any owner.   The consequence of such a construction would be disastrous, and all the provisions of the act may have full operation without it.

The license amounts to nothing more than a legislative act giving permission to a person, alleging himself to be the owner of a certain shore, to dock out, as therein prescribed.

But it may be said, suppose the board of chosen free-

holders should give a license to the Morris Canal and Banking Company, would not Brown's license and that of the company conflict? Most certainly they would. If both parties should attempt to build a dock in the same spot, adjoining the same shore, the courts are open, clothed with sufficient powers to settle the conflict ; and if they are not, it is better that legislative aid should be invoked than to confer such dangerous powers upon a political body by unnecessary inference.

Enough has been said to show the judgment of the court below erroneous in declaring the license void for want of proof before the freeholders. What judgment ought this court to give ? This depends upon the construction to be put upon the 9th section of the act. What was its object ? To provide a *certiorari* to review what had been done by the freeholders upon the case, as it was before them ? Or to give the court plenary power over the subject, upon the facts and merits of the case, as they really were, irrespective of what appeared before the freeholders—to take testimony and examine witnesses as to the title of the applicant and all other matters involved in the merits of the case ? If that was the design, if the court have such powers, the judgment should be reversed, to be proceeded in according to law, to ascertain, by the intervention of a jury, or by evidence taken before them, whether Albert N. Brown, at the time of the application, was the shore-owner or not; if he was, to affirm the validity of the license, for the mode in which the dock was authorized to be built, and its non-interference with the right of navigation, have not been questioned in this case ; if they had been, and the result of investigation showed it to be an injurious interference with navigation, the license might be set aside for that reason.

It is apparent that the legislature intended the examination of the case on the *certiorari* should be something different from a mere review of the proceedings for error ; that it should be a re-trial of the case, with its whole merits thrown open, or rather a trial for the first time. It

Brown v. Morris Canal and Banking Co.

cannot be supposed the legislature designed to confine a jury to what was before the freeholders. If that were so, the trial by jury would be a mockery.

This construction of the act will meet the design of the legislature to provide a summary mode in all plain cases of obtaining a sanction for the building of a dock into tide water, and at the same time guard the public interest in all other cases, a mode for the settlement of conflicting private rights, or of public rights, if involved in the case; for although a license to one not the owner of the shore might not protect him, or give any estate or right against the lawful owner, yet to him it might be an annoyance to which he ought not to be subjected—a cloud on his title, which, in justice to him, ought to be removed—a colorable license to attack him, which ought to be declared void.

Such are my views of the true effect of the ninth section; but the decision of the cause does not require a final disposition of this question.

The rule, that a jurisdictional fact must appear upon the face of proceedings of a special statutory character to make the judgment or proceeding valid, does not apply to proceedings legislative in their character, had before a body invested with a power, the exercise of which rests in sound discretion.

The judgment of the Supreme Court must be reversed, and the cause be remanded, to be proceeded in according to law.

*For affirmance*—Judges COMBS, VALENTINE and RISLEY.

*For reversal*—The CHANCELLOR, Judges ELMER, HAINES, WHELPLEY, CORNELISON, WOOD and SWAIN.