ALEXANDER J. SHAMBERG, PROSECUTOR, v. THE BOARD OF RIPARIAN COMMISSIONERS AND THE NEW JERSEY SHORE LINE RAILROAD COMPANY.

Argued June 13, 1904—Decided February 27, 1905.

No grant or license can be made by the riparian commissioners to any other person than a riparian proprietor of lands under the tidal rivers of the state, until the expiration of six calendar months after the riparian proprietor shall have been personally notified, in writing, by the applicant for such grant or license, and such riparian proprietor shall have neglected to apply for such grant or license and neglected to pay, or secure to be paid, the price said commissioners shall have fixed therefor.

On *certiorari.*

Before Justices FORT and PITNEY.

For the prosecutor, *Collins & Corbin.*

For the defendants, *Robert H. McCarter,* attorney-general, and *Vredenburgh, Wall & Van Winkle.*

The opinion of the court was delivered by

FORT, J. The writ in this case brings up certain grants of the riparian commissioners of New Jersey to the New Jersey Shore Line Railroad Company to land lying under water in front of the property of the prosecutor.

By common law the state is the owner of the lands under all the tidal rivers within its territorial limits, and may grant such lands as are not under the navigable waters of the rivers to anyone without making compensation to the owner of the shore. *Stevens* v. *Paterson and Newark Railroad Co.,* 5 *Vroom* 532.

The taking of land adjoining high-water mark, by condemnation, by a corporation possessing the power of eminent domain, does not divest the owner of the fee in the land of his right as riparian owner to first have a grant from the state of the lands lying under water, abutting upon the land in which he has the fee. *New Jersey Zinc and Iron Co.* v. *Morris Canal,* 17 *Stew. Eq.* 389; affirmed, 2 *Dick. Ch. Rep.* 598.

If this were not so by the common law it is now undoubtedly so, in this state, by statute. *Pamph. L.* 1877, *p.* 113; *Gen. Stat., p.* 2791, § 30.

By statute the legislature has limited the power of the riparian commissioners to grant to any person the lands of the state lying under the waters of the Hudson river to this extent, namely:

"That no grant or license shall be granted to any other than a riparian proprietor until six calendar months after the riparian proprietors shall have been personally notified in writing by the applicant for such grant or license, and shall have neglected to apply for the grant or license, and neglected to pay, or secured to be paid, the price said commission shall have fixed." *Pamph. L.* 1869, *p.* 1017; *Gen. Stat., p.* 2788, § 15.

This principle seems now to be extended to all tidewaters of the state in which the exterior lines of solid filling have been established by the riparian commissioners.

In *Elizabeth* v. *Central Railroad Co.,* 24 *Vroom* (at *p.*

495), Justice Dixon ·says: "In the present controversy the defendant cannot claim directly owing to the act of March 31st, 1869, which was construed in 124 *U. S.* 656, because that statute did not authorize grants of land under water in Arthur's Kill. *Fitzgerald* v. *Faunce,* 17 *Vroom* 536. The subsequent legislation enacted before the grant to the defendant, in effect, extended the provisions of that act to all the tidewaters of the state in which exterior lines of solid filling had been or should be established by the riparian commissioners.

"The original act of April 11th, 1864 (*Rev., p.* 980), empowered the commissioners to establish such exterior lines in New York bay, Hudson river, Kill von Kull, Newark bay, Arthur's Kill [Staten Island sound], Raritan bay, and the Delaware river, opposite to the county of Philadelphia; and the act of March 31st, 1869, section 7, continued in force all the powers and duties of the commissioners, except as superseded or modified by that act, an exception which did not impair the authority to establish exterior lines in Arthur's Kill. By an act approved March 21st, 1871, the commissioners were authorized to lease or grant to any riparian owner on tidewaters in the state the lands under water in front of his lands; by the act of April 6th, 1871 (*Rev., p.* 988), they were empowered to execute to any applicant leases or grants of any lands lying between the original high-water line and the exterior lines established, or to be established, with the same effect as if such grants or leases were made under the fourth section of the act of March 31st, 1869; and on the same conditions for the protection of riparian owners as the act of 1869 prescribed; and by the act approved March 27th, 1874 (*Rev., p.* 986), it was made lawful for the commissioners to fix the purchase-money or rentals to be paid on any application for so much of the land below high-water mark, or lands formerly under high water belonging to the state as may be described in any application therefor duly made according to law and in the name and under the seal of the state to grant or lease said lands to said applicant accordingly."

It will be noted that while this subsequent legislation thus reviewed by the learned justice who wrote the opinion authorized these grants to be made by the riparian commissioners, it carefully restricted the right to make such grants to "the same condition for the protection of riparian owners as the act of 1869 prescribes." This relates to the six calendar months' notice to and option in the riparian proprietors as is provided by the act of 1869.

Without further review of these statutes or the citation of other authorities, it is quite evident that a grant of any lands of the state lying within the exterior line of solid filling cannot be made by the riparian commissioners to any person or corporation other than the riparian proprietors until and unless six calendar months' notice has been given to the riparian owner, as provided by the act of 1869. Any grant otherwise made by said commissioners is void as against the owner of the *ripa.* Nor is there doubt about the owner of the *ripa* having such an interest in the lands under water abutting upon his riparian lands as will entitle him to call the action of the commissioners in question in making such a grant without notice to him, and thereby review such action and vacate it upon *certiorari.*

In the case before us it is admitted that no notice was given to the proprietor who is the owner of the *ripa* of the proposed grant to the defendants, and that no opportunity was given him to purchase the lands granted to the defendants, at the price fixed by the commissioners, before the original grant by the riparian commissioners was made to the defendants, on March 31st, 1904, or the amended or new grant was made to them on May 12th, 1904. For this reason, without considering the other reasons assigned, we think both of said grants, as made by the riparian commissioners, should be vacated and set aside.

In reaching this conclusion we have not overlooked the proviso to section 16 of the General Railroad act of 1903. *Pamph. L., p.* 655, § 16. But we do not think that this proviso, as it appears in the act of 1903, in any way repeals or modifies the provisions of the act of 1869, requiring notice

to the owner of the *ripa* before the riparian commissioners can make a grant of state lands lying between high and low water marks to any other person than a riparian proprietor.

The proviso to section 16 of the act of 1903 must be construed in the light of the enacting part of that section. The whole section reads as follows:

"Any railroad company may build and maintain over such streams as the road may cross such piers and bridges as they may deem expedient, and may build viaducts over or tunnels under any navigable or other river, stream or bay of water which such railroad may cross; putting in such viaduct a pivot draw with two openings, each of no less width than the widest opening of any viaduct or bridge now built over any such river, stream or bay of water, at right angles to the main channel, located at a point convenient for navigation; *provided,* that such company shall not take any land under water belonging to this state until the consent of the riparian commissioners shall first be had and obtained (unless the said land is at least twenty-five feet under the bed of the water), who are hereby authorized to convey the same on receiving such compensation as they may fix."

We think this proviso in section 16 is limited to such consents as are given by the riparian commissioners, in the cases where riparian lands are required, to permit a railroad company to make the construction or do the work specifically mentioned in that section. Whether, even in such cases, a grant could be made by the riparian commissioners of lands under water between high and low water marks, without the notice to the owner of the *ripa* required by the act of 1869 and subsequent statutes, it is not necessary to decide, and it is not decided. But it is clear, in the case now before us, which is a granting of the land of the state lying between high and low water marks, not for any of the purposes mentioned in section 16, or within its contemplation, that the provisions of the act of 1869, as to notice to the riparian proprietors, do apply.

The grants of the riparian commissioners brought up by the writ are set aside, with costs.