IN THE MATTER OF THE CONDEMNATION OF LANDS IN THE CITY OF CAMDEN TO BE TAKEN AS A BRIDGE SITE FOR THE DELAWARE RIVER BRIDGE, TO BE CONSTRUCTED BETWEEN THE CITY OF CAMDEN AND THE CITY OF PHILADELPHIA BY THE DELAWARE RIVER BRIDGE JOINT COMMISSION.

Submitted December 3, 1923.

**Title to Land—State Owner in Soil Between High and Low Water of Tidal Stream—No Obligation in Instant Case to Sell—Benefits to Adjoining Owners—Doctrine of Ownership of Land to Middle of Street—Local Common Law That Shore Owner Who Reclaims Land Under Water Acquires Title Good Even Against the State Superseded by Wharf Act of 1851.**

On findings and opinion.

For the Delaware river bridge joint commission, *Emerson L. Richards.*

For the board of commerce and navigation, *Harrison P. Lindabury.*

For David Baird, *Samuel H. Richards.*

The opinion of the court was delivered by

KATZENBACH, J. Chapter 69 of the laws of 1919 (*Pamph. L.* 1919, *p.* 120), authorizes the construction, with the co-operation of the State of Pennsylvania, of a bridge across the Delaware river between the cities of Camden and Philadelphia. The act provides that a joint commission (hereinafter referred to as the commission) shall conduct the work. By the act the commission is authorized to "acquire by purchase, by agreement, by condemnation, or in any other lawful manner, lands, structures, appurtenances, rights of way, franchises, easements or other interests in land lying within this state, including lands under water and riparian rights

of any person, railroad or other public or private corporations or municipality necessary to the building of the entire bridge."

The act further provides that if condemnation of lands, &c., in New Jersey is necessary the condemnation proceedings shall be pursuant to the Eminent Domain act of 1900. *Pamph. L.* 1900, *p.* 79.

By chapter 295 of the sessions laws of 1920 (*Pamph. L.* 1920, *p.* 526) a procedure for acquiring the lands, &c., necessary for the erection of the bridge is created, which supersedes, for this purpose, the Eminent Domain act of 1900. The method of procedure under the 1920 statute is for the commission to designate by resolution the lands, &c., to be acquired, and to cause to be made and filed a map of the lands, &c., necessary to be taken. On this map shall be noted the description of the lands to be taken, and whether they are to be taken in fee or by easement or otherwise. The name of the record owner thereof is also to be placed on said map. A notice of the intended action of the commission is to be given to the parties in interest appearing on said map within ninety days after the filing thereof. The parties to whom the notice is given are required to file an answer within twenty days after service of the notice. The answer shall set forth the nature of the claim or interest of the party in the lands to be taken, and the amount of damage claimed. In the present proceeding the commission passed the appropriate resolution, prepared a map known as drawing No. 1083, and filed the same in pursuance of the statute for the purpose of acquiring, among others, the following tract of land, namely, "all that certain tract or parcel of lands and premises lying and being in the city of Camden, county of Camden and State of New Jersey: Beginning in the south line of Pearl street, or the extended south line thereof, at a point distant four hundred and forty-nine feet four and three-quarters inches west, measured along the south line of Pearl street from the west line of Delaware avenue, and extending thence (1) along the extended south line of Pearl street north, seventy-five degrees twenty-two minutes eight

seconds west, one hundred and twenty feet three-eighths of an inch to a point; thence (2) north, thirteen degrees twenty-two minutes twenty seconds east, nineteen feet nine and five-eighths inches to a point; thence (3) north, seventy-six degrees thirty-seven minutes forty seconds west, one hundred and thirty-eight feet to a point; thence (4) north, thirteen degrees twenty-two minutes twenty seconds east, eleven feet three inches to a point; thence (5) north, seventy-six degrees thirty-seven minutes forty seconds west, six hundred and eighty-three feet two and three-eighths inches to the pierhead line in Delaware river, approved June 26th, 1916; thence (6) along same north, thirteen degrees twenty-six minutes twenty-two seconds east, one hundred and forty-seven feet three-eighths of an inch to a point; thence (7) on a line parallel with and distant one hundred feet north from the extended north line of Pearl street and along line of land of Charles Stockham estate south, seventy-five degrees twenty-two minutes eight seconds east, nine hundred and thirty-one feet nine and one-half inches to a corner of land of Philadelphia Steel and Wire Company at a point distant four hundred and sixty-two feet five inches west from west line of Delaware avenue, measured on line parallel with Pearl street; thence (8) partly along land of Philadelphia Steel and Wire Company and parallel with Delaware avenue south, fourteen degrees thirty-eight minutes fifty-two seconds west, one hundred and twenty-six feet seven and one-eighth inches to a point in the bed of Pearl street; thence (9) south, seventy-six degrees thirty-seven minutes forty seconds east, twelve feet three and three-eighths inches to a point; thence (10) south, thirteen degrees twenty-two minutes twenty second west, thirty-three feet eight and one-quarter inches to place of beginning."

The nature of the interest to be taken is set forth as a fee-simple. The owner is designated as David Baird. It is stated that Mr. Baird claims to hold title in fee by deeds recorded in the office of the register of deeds of Camden county from William H. McWhirter and Elizabeth, his wife, dated the 26th day of August, 1907, and recorded in book

320, page 347, on the 26th day of August, 1907, in the office of the register of deeds of Camden county, and from Elizabeth B. Patchin, John H. Patchin, John N. Ake and Thomas Barrett, executors under the will of Aaron W. Patchin, dated the 2d day of October, 1901, and recorded in book 257, page 313, on the 16th day of October, 1901, in the office of the register of deeds of Camden county, and by grant from the riparian commissioners of the State of New Jersey to David Baird, dated September 26th, 1907, recorded in the office of the register of deeds in book 322 of deeds, page 43.

The resolution further states that the State of New Jersey claims to be the owner of record of a part of the land above described as follows: Beginning in the south line of Pearl street, or the extended south line thereof, at a point distant four hundred and forty-nine feet four and three-quarters inches west, measured along the south line of Pearl street from the west line of Delaware avenue, and extending thence (1) along the extended south line of Pearl street north, seventy-five degrees twenty-two minutes eight seconds west, one hundred and twenty feet three-eighths of an inch to a point; thence (2) north, thirteen degrees twenty-two minutes twenty second east, nineteen feet nine and five-eighths inches to a point; thence (3) north, seventy-six degrees thirty-seven minutes forty seconds west, one hundred and thirty-eight feet to a point; thence (4) north, thirteen degrees twenty-two minutes twenty seconds east, eleven feet to a point; thence (5) north, seventy-six degrees thirty-seven minutes forty seconds west, six hundred and eighty-three feet two and three-eighths inches to the pierhead line in Delaware river, approved June 26th, 1916; thence (6) along same north, thirteen degrees twenty-six minutes twenty-two seconds east, one hundred and forty-seven feet three-eighths of an inch to a point; thence (7) on a line parallel with and distant one hundred feet north, from the extended north line of Pearl street south, seventy-five degrees twenty-two minutes eight second east, two hundred and nineteen feet ten and one-eighth inches to a point on the pierhead line of the Delaware river, approved by secretary of war November

1st, 1890, and adopted by the riparian commissioners of New Jersey; thence along same (8) south, thirteen degrees forty-two minutes eleven seconds west, one hundred feet to a point in the extended north line of Pearl street; thence along same (9) south, seventy-five degrees twenty-two minutes eight seconds east, seven hundred and twelve feet one-half of an inch to a corner of lands of the Philadelphia Steel and Wire Company at a point distant four hundred and sixty-two feet five inches west from the west side of Delaware avenue, measured on the extended north line of Pearl street; thence (10) south, fourteen degrees thirty-eight minutes fifty-two seconds west, twenty-six feet seven and one-eighth inches to a point; thence (11) south, seventy-six degrees thirty-seven minutes forty seconds east, twelve feet three and three-eighths inches to a point; thence (12) south, thirteen degrees twenty-two minutes twenty seconds west, thirty-three feet eight and one-quarter inches to the place of beginning.

The resolution further states that the city of Camden claims an interest in a part of the said lands by reason of the servitude of an easement of a public street, known as Pearl street, in, to and over a part of the above-described lands, which part is described as follows:

Beginning in the south line of Pearl street or the extended south line thereof at a point distant four hundred and forty-nine feet four and three-quarters inches west, measured along the south line of Pearl street from the west line of Delaware avenue, and extending thence (1) along the extended south line of Pearl street north, seventy-five degrees twenty-two minutes eight seconds west, one hundred and twenty feet three-eighths of an inch to a point; thence (2) north, thirteen degrees twenty-two minutes twenty seconds east, nineteen feet nine and five-eighths inches to a point; thence (3) north, seventy-six degrees thirty-seven minutes forty seconds west, one hundred and thirty-eight feet to a point; thence (4) north, thirteen degrees twenty-two minutes twenty seconds east, eleven feet three inches to a point; thence (5) north, seventy-six degrees thirty-seven minutes forty seconds west, six hundred and eighty-three feet two and three-eighths

inches to the pierhead line in river Delaware, approved June 26th, 1916; thence (6) along same north, thirteen degrees twenty-six minutes twenty-two seconds east, forty-seven feet one-eighth of an inch to a point on the extended north line of Pearl street; thence (7) along same south, seventy-five degrees twenty-two minutes eight seconds east, nine hundred and twenty-nine feet eight and one-quarter inches to a corner of lands of the Philadelphia Steel and Wire Company at a point distant four hundred and sixty-two feet five inches west from the west side of Delaware avenue, measured on the extended north line of Pearl street; thence (8) south, fourteen degrees thirty-eight minutes fifty-two seconds west, twenty-six feet seven and one-eighth inches to a point; thence (9) south, seventy-six degrees thirty-seven minutes forty seconds east, twelve feet three and three-eighths inches to a point; thence (10) south, thirteen degrees twenty-two minutes twenty seconds west, thirty-three feet eight and one-quarter inches to the place of beginning.

The city of Camden has waived any interest it may have in this property. The controversy in this proceeding has narrowed itself to the question as to whether Mr. Baird, who by his answer claims ownership in the entire tract, is correct in his contention or whether he is the owner of only a part of the above-described property sought to be acquired by the commission, and, if so, what part, and if only a part, then in whom is the title to the remainder of the property desired by the commission.

The entire tract for the purpose of this proceeding may be divided into three parts. The first being the land included within the riparian grant made by Mr. Baird by the riparian commission, dated September 26th, 1907, and recorded in the office of the register of Camden county in book 322 of deeds, at pages 43, &c.; second, the land under the waters of the Delaware river between what is known as the exterior line for piers as fixed by the secretary of war, November 1st, 1890, and adopted by the riparian commission of New Jersey, and the pierhead line approved by the secretary of war, June 26th, 1916, which lies immediately west

of the 1907 grant of Mr. Baird, and three, the land lying within the extended lines of a street known as Pearl street.

To more readily understand the questions involved in this proceeding it is necessary to state a few facts taken from the testimony regarding this property and its surroundings. The entire tract lies west of a street in Camden known as Delaware avenue. That portion of Delaware avenue which lies immediately east of the tract was originally land over which the tide ebbed and flowed. The evidence fixes the high-water line of the Delaware river in the year 1873 between Linden and Pearl streets, shown on the map filed, at a point approximately one hundred feet east of the present easterly line of Delaware avenue. The high-water line extended from Pearl street in a northwesterly direction, passing over the westerly line of Delaware avenue about one hundred and twenty-five feet from the extended northerly line of Pearl street. The approximate low-water line at this point, as plotted on a map in 1865, is some one thousand eight hundred feet west of the high-water line.

John and Charles Stockham owned, in 1870, fast land north and south of Pearl street. Prior to 1870 Pearl street extended only to a street known as Point street, which is one block east of Delaware avenue (formerly known as Water street). In the year 1870 the common council of Camden under its charter proceeded, as the minutes of that body show, to open Pearl street from Point street to low-water mark in the Delaware river. Commissioners were appointed who viewed the property and assessed the damages. John and Charles Stockham were awarded $2,000, which they probably received, as the minutes show that orders were directed to be drawn to those to whom damages had been awarded. The proceedings were evidently conducted upon the belief that John and Charles Stockham were the owners of the land between the high and low-water marks. This was apparently the belief of John and Charles Stockham from the conveyances subsequently made by them. They never, after the condemnation proceedings, did any act, so far as the evidence discloses, by which they sought to exercise any do-

minion or control over what will be termed for convenience the land between the extended lines of Pearl street west of Delaware avenue. On March 14th, 1874, John and Charles Stockham conveyed by deed, in which their wives joined, to Daniel T. Gage and Hamilton L. Moulton, a tract of land described as follows: "Beginning at the northwest corner of Point and Pearl streets, thence westerly along the north line of said Pearl street extending one thouand feet, more or less, to the wharf line in the Delaware river, established by law in front of the city of Camden; thence northerly up said River Delaware by said wharf line to a point one hundred feet north of said north line of Pearl street, measuring on a line at right angles with said north line of Pearl street; thence easterly parallel with said north line of Pearl street, extending eight hundred feet, more or less, to the middle line of Water street; thence northerly along the middle line of Water street fifty feet to a corner, one hundred and fifty feet northerly of the said north line of Pearl street; thence easterly and parallel with said north line of Pearl street two hundred and thirty feet, more or less, to the west line of Point street; thence southerly by the west line of Point street one hundred and fifty feet to the place of beginning."

The Water street referred to in this deed is the present Delaware avenue.

That portion of the above-described tract west of Delaware street was, on August 26th, 1907, conveyed to Mr. Baird by William McWhirter. On May 11th, 1883, John and Charles Stockham conveyed to Aaron W. Patchin the following tract of land: "Beginning at a point in the centre of Delaware street in line with the south side of Pearl street, and running thence (1) westwardly along the south side of Pearl street as far as it extends, and in the same course one thousand and ninety-one feet, more or less, to the exterior wharf line as laid down on the map entitled a map showing the lands under the water of the Delaware river, opposite the cities of Gloucester and Camden, and the exterior wharf line established by the riparian commissioners of the State of New Jersey, 1873; thence (2) southwardly along said exterior wharf line

to the exterior wharf line formerly of Samuel B. Garrison, now the said Aaron W. Patchins; thence (3) eastwardly along said Garrison's, now Patchin's, northerly boundary line, one thousand and eighty-eight feet, more or less, to the centre line of Delaware street aforesaid; thence (4) northwardly along the centre line of said Delaware street to the place of beginning, be the contents what it may. Being part of the same tract of land which William F. Reeve and wife and others conveyed to the said John and Charles Stockham by deed bearing date December 24th, A. D. 1862, and recorded in the register's office for Camden county in book No. 39 of deeds, page 606, &c., including the lands and riparian rights connected therewith in the aforesaid described tract, which the State of New Jersey by its commissioners, Francis S. Lathrop and others, conveyed to the said John and Charles Stockham by deed bearing date April 18th, 1874, and to be recorded."

This tract of land was, with other land, conveyed to Mr. Baird by the executors of Aaron W. Patchin, by deed dated October 2d, 1901. The description contained in this deed is as follows: "Beginning at a stone in the line of lands formerly of William Cooper and corner to land formerly of Richard M. Cooper, said stone is now in what is known as Front street, seventeen feet and four inches, westward from the easterly line of said Front street and forty-nine feet southward from the southerly line of Pearl street, and extending thence southward, in said Front street, along the said lands formerly of Richard M. Cooper, and parallel, or nearly parallel, with Front street, crossing the extended lines of Linden street, three hundred and fifty-five feet, more or less, to stone corner to lands formerly of Esther L. Cooper; thence westwardly, along the said land formerly of Esther L. Cooper, deflecting slightly southward from a line parallel with Linden street extended, crossing Point street, three hundred and ninety-five feet, more or less, to a point in the line of ordinary high-water mark of the River Delaware in the year 1874, said high-water line being determined as being one hundred and forty-nine feet westward from the westerly

line of Front street, measured along the aforesaid line of lands formerly of Esther L. Cooper; thence westward, parallel with Linden street extended, one hundred and two feet, more or less, to the middle of Delaware street; thence northwardly, along the middle of Delaware street, one hundred and fifty feet; thence westwardly, parallel with Linden street extended, thirteen hundred feet, more or less, to the exterior wharf line as established by the riparian commissioners of New Jersey in the year 1873; thence northwardly, along said exterior line, two hundred and fifty-nine feet, more or less, to the extended southerly line of Pearl street; thence eastwardly, along the extended southerly line of Pearl street, thirteen hundred feet, more or less, to the middle line of Delaware street; thence northwardly, along the middle line of said Delaware street, thirty feet, to the middle line of Pearl street; thence eastwardly, along the middle line of Pearl street, two hundred and thirty-seven feet, more or less, to the westerly line of Point street; thence southwardly, along the westerly line of Point street, one hundred and five feet, more or less, to the line of lands formerly of William Carman; thence eastwardly along said line, crossing Point street, and nearly crossing Front street, two hundred and sixty feet, more or less, to the place of beginning."

It will be observed that in the deeds of the Stockhams there was no inclusion of the lands within the extended lines of Pearl street. All the deeds refer to either the north or south line of Pearl street extended, as the case may be.

Pearl street, notwithstanding the proceedings by the common council of Camden to open it to the low-water mark taken by the common council of Camden in 1870, was never opened or used as a street west of the westerly line of Delaware avenue. The land between high-water mark and the westerly line of Delaware avenue was gradually filled in by those who were conducting industries in this locality. Pearl street, so-called, was not a street west of the westerly line of Delaware avenue, but was a part of the log basin in which timber was stored. Mr. McWhirter, who sold to Mr. Baird in 1907, had conducted a stone factory on the north side of

Pearl street east of Delaware avenue. He had filled in between the extended lines of Pearl street some twenty and twenty-five feet beyond the westerly line of Delaware avenue at the time of the purchase of the property by Mr. Baird in 1907. Since the acquisition of the McWhirter property by Mr. Baird about three hundred and twenty feet within the extended lines of Pearl street has been filled in. Piling has been driven almost to the 1890 pierhead line. A spar shed thirty by one hundred and twenty feet has been erected within the extended lines of Pearl street. A fence has been erected across Pearl street at the westerly line of Delaware avenue.

While John and Charles Stockham, from the deeds made by them for the lands north and south of Pearl street as extended, apparently believed they owned the land between the high and low-water marks of the Delaware river at this point, they evidently had some misgivings about it, because they procured in 1873 the passage of an act by the legislature which granted to them the right to build, maintain and keep in repair docks, &c., in front of their land in the First ward of the city of Camden. They also obtained from the riparian commission of the State of New Jersey, on April 18th, 1874, a grant for the lands south of Pearl street as extended, described as follows: "All that parcel of land flowed by tidewater, lying under the waters of the Delaware river, in the city of Camden, in the county of Camden and State of New Jersey, described as follows: Beginning at a point in the middle of Delaware street in the southerly line of Pearl street in the city of Camden, and from thence running westerly and in a straight line with the southerly line of Pearl street to the exterior wharf line as shown on the the map made by the commissioners appointed under the authority of the act entitled 'An act to ascertain the rights of the state and of the riparian owners to the lands lying under the waters of the bay of New York and elsewhere in this state,' approved April 11th, 1864, and the supplements thereto; thence southerly along said exterior wharf line, one hundred and nine feet to the northwesterly corner of land granted to Samuel

B. Garrison; thence westerly along the northerly line of said Garrison land to the middle of Delaware street, and thence northerly along the middle of said Delaware street to the place of beginning."

This description is set forth at length because of its bearing on other features of the case hereafter considered. No wharves were constructed by the Stockhams in front of the one hundred feet north of Pearl street, conveyed on March 14th, 1874, to Gage et al., or in front of Pearl street extended.

It is conceded that Mr. Baird has a good title to the lands, rights and privileges mentioned and conveyed to him by the State of New Jersey by its grant of September 26th, 1907, and is entitled to full compensation therefor—that is, the market value thereof.

The grant of September 26th, 1907, provides as follows: Provided, that the State of New Jersey, by its riparian commissioners or any other lawful authority, may, from time to time, change the exterior lines for solid filling and piers, and fix the same further from the shore than formerly, even though such action may affect the lands hereby granted, whenever the state may deem it necessary for its interest so to do; and if such exterior lines shall be placed out further from the shore than formerly, then the party or parties claiming under this instrument may, within such period as may be fixed by the state, either through said riparian commissioners or any other lawful authority, have the exclusive right to apply for and receive a lease or grant of the additional land under water lying between the present exterior lines above described and the new exterior line or lines that may hereafter be fixed, upon payment of such additional rental or compensation, and upon such terms as shall be fixed by said commissioners or other lawful authority under any present or future law of this state; such additional land to be used for solid filling and for piers, respectively, as directed by the said commissioners or their successors, or other lawful authority, under any present or future law of this state.

Counsel for Mr. Baird argues that as the land under water between the westerly line of the 1907 grant to the present

pierhead line (the 1916 line) cannot by the terms of the 1907 grant be sold by the state to anyone except Mr. Baird, that Mr. Baird has a beneficial interest therein, which makes the land more valuable to him than if he owned it in fee, for the reason that Mr. Baird now enjoys the benefits thereof without the burdens, and that for the loss of this beneficial interest Mr. Baird is entitled to compensation.

This contention I deem unsound. The state is the owner of the soil below high-water mark in a tidal stream. *McCarter* v. *Lehigh Valley Railroad Co.*, 78 *N. J. Eq.* 346. The Delaware river is a tidal stream. The interest of the state in the soil below high-water mark of a tidal stream is a fee-simple absolute. *Attorney-General* v. *Hudson Tunnel Railroad Co.*, 27 *Id.* 176. The state's right can only be obtained by grant from the state itself, express or implied. *Wilson, Attorney-General,* v. *East Jersey Water Co.*, 78 *Id.* 329. Mr. Baird was given by his 1907 grant merely the privilege of purchasing, if the state extended the pierhead line and desired to sell the land under water between the old and new pierhead line. There is no obligation upon the state to sell. To sell is purely optional with the state. The only right in this land which Mr. Baird has is the right to use the waters above it in common with all other citizens of the state. He has no exclusive right to the land and the use of the waters above it, because he holds no grant from the state for this land. He has no right which can be condemned. The option of purchase given by the 1907 grant, in the event of the state being willing to sell, adds, however, an element of value to the land comprised in the 1907 grant. This will enhance the price which will have to be paid to Mr. Baird for the land covered by the 1907 grant.

The next question for consideration is whether Mr. Baird holds title to the lands within the extended lines of Pearl street. The argument advanced to support the contention that Mr. Baird is the owner of the land within the extended lines of Pearl street is based upon the doctrine that the owner of land fronting upon a public highway or street owns to the middle of the street. *Jonas* v. *Salter*, 39 *N. J. L.* 469. The

Stockhams conveyed, or attempted to convey, the land to the north of the northerly line of Pearl street extended in 1874, and the land to the south of the southerly line of Pearl street extended in 1883. These deeds it is claimed, under the authority of *Jonas* v. *Salter, supra,* conveyed the land to the middle of Pearl street, and as Mr. Baird is the successor in title to these two tracts of land, he has, it is contended, become the owner of the land within the extended lines of Pearl street. This position is untenable. In the first place, there is in law no Pearl street west of Delaware avenue. The city of Camden acquired no easement beyond the high-water mark by the proceedings taken in 1870 to open Pearl street to the low-water mark of the Delaware river, because the Stockhams, against whom the proceedings were instituted, had no ownership of the soil between the high and low-water marks. It belonged to the state. The state has never parted with its interest therein, so the fee within the extended lines of Pearl street is in the state. In the second place, the principle laid down in *Jonas* v. *Salter, supra,* only applies to a street which actually exists. Pearl street so-called, beyond the westerly line of Delaware avenue, had never in fact existed as a street. It was part of a log basin. When it was filled in, for about three hundred and twenty feet west of Delaware street, a building was erected thereon. A gate prevents any use thereof by the public.

In the third place the Stockhams, by their deed of March 14th, 1874, conveyed no title to the land north of the extended northerly line of Pearl street to their grantees, as the title to this land was in the State of New Jersey.

No title having passed to the grantees by the deed of March 14th, 1874, of course no title was obtained by the grantees to the middle of Pearl street extended subject to the public easement. Hence, Mr. Baird obtained no title to any land within the extended line of Pearl street by the McWhirter deed of August 26th, 1907. Within a month after the delivery of the McWhirter deed to him, Mr. Baird had sought and obtained the riparian grant of September 26th, 1907. This evidences a doubt upon the part of his then legal adviser

as to the value of the McWhirter deed to the land under water purported to be conveyed thereby. The grant of the state, dated September 26th, 1907, extended only to the northerly side of Pearl street considered as extended. When the Stockhams conveyed to Patchin in 1883 the land south of the southerly line of Pearl street extended, they had obtained from the state a riparian grant dated April 18th, 1874, for the part conveyed south of the southerly line of Pearl street extended. This grant[1] extends no farther north than the southerly line of Pearl street extended. It will therefore be observed that no grant by the state has ever included the land within the extended lines of Pearl street.

It is also contended that Mr. Baird is entitled to the land within the extended lines of Pearl street by virtue of a legislative grant to the Stockhams, approved April 2d, 1873. *Pamph. L.* 1873, *p.* 1329. This act of the legislature gave to the Stockhams the right to build, maintain and keep in repair docks, wharves, piers and other appliances in front of their lands in the First ward of the city of Camden. Counsel for Mr. Baird argues that the municipal proceedings to open Pearl street left the fee of Pearl street, subject to the public easement, in the Stockhams, and that this legislative grant cut off the city's right to a street and as well as any possible right the city might have to a riparian grant, and that the Stockham deeds mentioned passed the title to Pearl street as extended, so that Mr. Baird, by obtaining title to the lands on both sides of Pearl street as extended, succeeded to such riparian rights as were given by this legislative grant.

The construction placed on the 1873 legislative grant by the Stockhams seems to me to be a complete answer to this argument. The grant is not exact as to location. It is indefinite. When the act was passed the Stockhams had accepted $2,000 from the city of Camden for the strip of land sixty feet wide, known as Pearl street, which as they and the city thought extended Pearl street to the low-water mark. The Stockhams never attempted to build any wharves in front of Pearl street as extended, or never attempted to exercise any dominion over the land or water within this sixty

feet. They built wharves and piers under the legislative grant, as shown by maps in evidence upon property to the north of the tract included in the description in the Mc-Whirter deed of 1907 to Mr. Baird. The Stockhams also, in 1873, owned, or believed they owned, the property immediately to the north and south of Pearl street as extended, and yet they did not build wharves and piers on either of these parcels, obtaining, as has been stated, a riparian grant, on April 18th, 1874, for the land south of the southerly line of Pearl street as extended. Thus the construction placed upon this 1873 legislative grant by the Stockhams is most persuasive and convincing, that they never considered that under it they obtained any rights within the extended lines of Pearl street.

There is no reference to this legislative grant in the deeds executed by the Stockhams for either of the properties north and south of Pearl street extended, now owned by Mr. Baird. The act of 1873, moreover, seems to be only a license to build wharves, and does not create an easement which would pass under the general clauses of a deed without specific mention. The privilege granted by the 1873 statute would seem, also, to have been repealed by the act approved March 20th, 1891 (*Pamph. L.* 1891, *p.* 216), except to the extent of the reclamation and building completed prior to January 1st, 1892, but it is not necessary, it seems to me, to so hold, in view of the construction placed upon the 1873 act by the Stockhams.

The third point made with reference to the land within the extended lines of Pearl street is that, under the common law, there was a right given to the shore owner to reclaim land under water, and thereby acquire a title good even against the state. *Bell* v. *Gough,* 23 *N. J. L.* 624. The 1851 Wharf act superseded this local common law. By the act of March 20th, 1891, the Wharf act was repealed. The evidence shows that within the extended lines of Pearl street no work of reclamation was done prior to 1892. The reclamation which has been made was not done under the Wharf act. The act of 1891 expressly states that the repeal of the Wharf act shall

not revive any local common law, so no title has been obtained by Mr. Baird to the land within the extended lines of Pearl street by the reclamation which has been made commencing with the year 1903.

These views lead me to find that Mr. Baird has no title to the land within the extended lines of Pearl street west of the westerly line of Delaware avenue. This land blongs to the State of New Jersey. I also find that Mr. Baird has no title to the lands under water between the westerly line of the land granted by the state through the riparian commission by the grant of September 26th, 1907, and the new pierhead line approved by the secretary of war, June 26th, 1916. I find that Mr. Baird has title to all the lands included within the boundaries of the riparian grant of September 26th, 1907.

In arriving at these findings I do not wish, from anything which I have said, to convey the impression that the claims advanced by the counsel for Mr. Baird are considered by me to be without merit, or that Mr. Baird has been in possession of land to which he was not justified in believing he had either title to or the right of possession of. The questions presented I have found difficult of solution. I may not be right in the conclusions which I have reached. The land in controversy was of little value when the mistake regarding the laying out of Pearl street was made. It has only become valuable after the lapse of over fifty years by reason of the remarkable growth of business and commerce in this locality. Mr. Baird and his counsel have, with the utmost frankness, stated to the court that all that they desire is just compensation for the lands and riparian rights to which it may be found Mr. Baird is justly entitled.

Some questions have arisen between the bridge commission and the board of commerce and navigation. The bridge commission contends that when the legislature authorized the construction of a bridge over navigable waters resting upon riparian land, that it impliedly granted for the purpose of the bridge the lands necessary to be occupied for this purpose, and that this land the bridge commission can take without compensation. The act authorizing the construction of

the bridge does not embody any provision requiring compensation to be paid for any lands belonging to the state. I would be inclined to adopt the view that the act authorizing the construction of the bridge carried with it an implied grant to take any lands of the state necessary for the erection of the bridge without compensation were it not for the fact that the legislature of 1894 by an act (*Pamph. L.* 1894, *p.* 123) irrevocably appropriated for the support of the free public schools of this state all of the lands under water belonging to the State of New Jersey. This act brought these lands, or the proceeds of the sale thereof, within the provision of article IV, section 7, paragraph 6 of the constitution, which provides that any property appropriated for the support of free schools shall remain a perpetual fund, and the legislature cannot borrow, appropriate or use the same, or any part thereof, for any other purpose, under any pretense whatever.

The act of 1894 was construed in the case of *Henderson* v. *City of Atlantic City,* 64 *N. J. Eq.* 583, as irrevocably devoting lands under water to the support of free schools by force of the constitutional provision referred to, and a grant of riparian lands to the city of Atlantic City for a nominal consideration was held void. The argument was advanced in the present case that the constitution only referred to property appropriated prior to the adoption of the constitutional amendments of 1875. The section of the constitution referred to especially deals with property "which may hereafter be appropriated for that purpose." This language seems to me to clearly bring property appropriated for this purpose, after the adoption of the constitutional amendment under its protection, to an extent which disenables a subsequent legislature from withdrawing such property from the protection of this provision of the constitution. The legislature must have had, and will be presumed to have had, in mind the situation regarding riparian lands when it enacted the law for the construction of the Camden-Philadelphia bridge, and the bridge commission will have to pay the fair value of such riparian lands belonging to the state as may

be required for the purpose of the bridge. The fund derived therefrom will go to the support of free public schools.

The board of commerce and navigation contends that no condemnation suit can be instituted against it by the bridge commission as it is a state agency, and as such it stands in the shoes of the State of New Jersey, and the lands under its control cannot be taken by condemnation, but can only be acquired by agreement. I presume that the board of commerce and navigation would not place an unreasonable price on any riparian lands necessary to the consummation of the project under the control and direction of the bridge commission, so the question raised by counsel for the board of commerce and navigation is somewhat academic. On the other hand, it does not seem to me that when the state gave to the bridge commission the power to condemn lands, &c., including lands under water, that it intended that the construction of the bridge could be indefinitely held up by withholding against an agency of its own creation the power of condemnation, if that agency insists upon demanding prices for the property under its control which are unreasonable. I am of the opinion that the bridge commission had the power, by the act authorizing the construction of the bridge, to take by condemnation proceedings against the board of commerce and navigation such lands of the state as may be necessary for the purposes of the bridge.

It was agreed that the court should fix no damages for the owners in this proceeding, as it was stated that the damages can be amicably adjusted when the parties are apprised of the ownership of the lands in dispute.