119 N.J. Super. 426 (1972)
292 A.2d 31
CHARLOTTE L. TAYLOR, APPELLANT,
v.
RICHARD J. SULLIVAN, INDIVIDUALLY, AND AS COMMISSIONER OF DIVISION OF NATURAL RESOURCES IN THE DEPARTMENT OF ENVIRONMENTAL PROTECTION (FORMERLY THE DIVISION OF RESOURCE DEVELOPMENT), NATURAL RESOURCE COUNCIL IN THE DEPARTMENT OF ENVIRONMENTAL PROTECTION (FORMERLY THE RESOURCE DEVELOPMENT COUNCIL) BUREAU OF NAVIGATION OF THE STATE OF NEW JERSEY, WILLIAM T. CAHILL, GOVERNOR OF THE STATE OF NEW JERSEY, AND THE STATE OF NEW JERSEY, RESPONDENTS.
Superior Court of New Jersey, Appellate Division.
Argued December 20, 1971.
Decided June 15, 1972.
*428 Before Judges CONFORD, MATTHEWS and FRITZ.
Mr. Sidney Finkel argued the cause for appellant (Mr. Harry Green, of counsel).
Mr. Sherman T. Brewer, Jr., Deputy Attorney General, argued the cause for respondents (Mr. George F. Kugler, Jr., Attorney General, attorney; Mr. Stephen Skillman, Assistant Attorney General, of counsel).
PER CURIAM.
The principal question here presented is whether the Commissioner of the Department of Environmental Protection has absolute discretion to cancel and revoke, prior to payment by the grantee and actual delivery of a deed, a prior resolution fully implemented by the appropriate agencies of the Department and state officials to grant a riparian interest to a qualified upland owner. We resolve that question in the affirmative.
Appellant owns a group of several small islands called collectively Flat Island, situated in Manahawken Bay and lying about 600 feet west of Long Beach Island. Her late husband, who died in July 1970, wrote to the then Division of Resource Development in the Department of Conversation and Economic Development[1] in April 1966 informally applying on behalf of himself and others for a grant of riparian title in connection with the proposed residential development of the island. On receiving informal approval, he submitted a formal application in July 1966 for a riparian lease or grant. A substantial expansion of the island by fill was contemplated. In September 1966 the Council advised Taylor that it had voted to issue the grant at $10 per front foot *429 for 4,825.44 feet and $7.50 for 9,747.19 feet along the waterways. At request, Taylor forwarded $500 to the Council for preparation of the instrument.
The then Commissioner remained undecided about the matter for three years. But on November 21, 1969 a copy of the deed was submitted to Taylor for review and he was informed that if satisfactory the deed would be executed. On November 28, 1969 Taylor signified accord. On December 17, 1969 the deed was signed by then Governor Hughes, the then Commissioner of the Department and the appropriate subordinate agency heads and it was duly attested and acknowledged. On January 27, 1970 (after inauguration of Governor Cahill) the supervisor of grants and leases informed Taylor that the grant was ready for delivery and requested payment in the sum of $121,373.15, advising him that payment had to be made by April 27, 1970.
On April 8, 1970 the Council voted to grant joint requests by Taylor and the Mayor of Long Beach Township for a six months' extension to October 27, 1970 for payment for the grant, Taylor having agreed to sell the island to the township and the extension being needed to afford the township voters time to approve the purchase by referendum. (Commissioner Sullivan took office April 22, 1970.) As the referendum date was later fixed for November 3, 1970, Taylor's attorney and a township commissioner requested a further two-month extension, and the Council granted it on October 14, 1970, but, according to its minutes, expressly "without prejudice to delivery of the grant and to have it reviewed by the Commissioner and the Attorney General; and the validity of the grant be referred to the Attorney General's office for an opinion." (Emphasis added.)
On November 3, 1970 the referendum failed of passage and on the same day the Commissioner informed Mrs. Taylor by letter that the application was denied. She filed an appeal to this court December 17, 1970, and was informed on May 4, 1971 that at its January 27, 1971 meeting, upon *430 the basis of the Commissioner's action, the Council had voted to cancel the application and forfeit the filing and preparation fees paid by the applicant.
On this appeal appellant argues (1) she entered into an agreement with the State and is entitled to specific performance thereof; (2) respondents have no power to annul the grant; (3) respondents are barred by equitable estoppel, and (4) refusal to deliver the grant and its cancellation are arbitrary and capricious and in violation of appellant's state and federal constitutional rights.
For a comprehensive discussion of the nature and history of the State's interest in riparian lands and of the development of the common and statutory law concerning transfer of such interests by the State see Bailey v. Driscoll, 34 N.J. Super. 228 (App. Div. 1955, per Hall, J.A.D.) affirmed in part and reversed in part in 19 N.J. 363 (1955). The Appellate Division opinion in that case, without disapproval in that of the Supreme Court, establishes that action or inaction by the designated agencies and officers of the State in respect of grants of its riparian interests is not reviewable in terms of alleged abuse of discretion but solely on the basis of whether their action is within or without the bounds of the pertinent statutory limitations. 34 N.J. Super. at 253. "Of course, the Council is entrusted with complete discretion as to whether it will convey anything and, if so, at what price * * *." Ibid. Since, moreover, the statute provides that no such grant shall be effective "except when approved and signed by the Governor and the Commissioner * * *," N.J.S.A. 13:1B-13; and see N.J.S.A. 13:1A-29, it is clear that the "complete discretion" of the Council is subject additionally to the equally comprehensive discretionary approval of the Chief Executive and the Commissioner. These statutory requirements evidence that in the administration of this subject matter the State's proprietary interest is involved and the designated officers exercise the proprietor's absolute discretion, subject only to the limitations stated in the controlling statutes, to convey or *431 not, and on such terms as the Council and they may choose. Bailey v. Driscoll, supra, 34 N.J. Super. at 252-253.
In the light of this background, the grounds of appeal are seen to be devoid of merit.
1. The situation here is not to be analogized with that of private vendor and vendee of lands. The statute does not contemplate an executory agreement between the State to sell and the upland owner to buy. Rather does it fix conditions for consummation of the grant, and an essential such condition prerequisite is payment of the consideration by the grantee. N.J.S.A. 12:3-6; 12:3-10. The specified consideration was here never paid, or even tendered, by appellant. Until payment and acceptance thereof the intrinsic intent of the statutory scheme is that the State's representatives are free to cancel the inchoate proposal.
2. The principle of estoppel does not apply here in law or in fact. See O'Neill v. State Hwy. Dept., 50 N.J. 307, 319 (1967). Discretion of the kind here reposed by the statute in the Commissioner and Governor is beyond judicial review. Id. at 315.
On the factual side, appellant and her predecessors in interest knew that if they did not produce the stipulated price of the grant by October 27, 1970 (date of the six-months' extension) they were forfeit. They had not yet done so nor does the record suggest that they would or could have, by that date, as matters stood on October 14, 1970, when the additional two-months' extension was allowed. Moreover, that extension was not unqualified. It was made expressly subject to review of the grant by the Commissioner. Thus, when the two-months' extension was made, appellant had no assurance of consummation of the grant unless, at the very least, she made payment before expiration of the original unqualified six months' extension (assuming, arguendo, incorrectness of our basic view that the Department could cancel the proposal at any time before payment). The element of substantial damage because of justified reliance upon governmental action is here absent.
*432 3. In the light of what has been said above, the argument of arbitrariness in the actions of the Commissioner and Council is irrelevant. Moreover, the assertions of denial of constitutional rights are frivolous.
In view of the foregoing conclusions we need not consider the additional question argued as to whether a deed signed by the Governor and other departmental officials during their term of office could have efficacy thereafter for purposes of subsequent delivery in exchange for simultaneous payment by the grantee.
Affirmed; no costs.
NOTES
[1] The Department and its constituent agencies have since undergone considerable legislative reorganization and change in nomenclature. Unless otherwise specified, references herein to the Commissioner and to the Council will be, respectively, to the department head and the administrative agency involved at the time of the action indicated.