128 N.J. Super. 552 (1974)
320 A.2d 876
EVELYN LE COMPTE, PLAINTIFF-APPELLANT,
v.
THE STATE OF NEW JERSEY, RICHARD SULLIVAN, COMMISSIONER OF THE DEPARTMENT OF ENVIRONMENTAL PROTECTION, AND THE NATURAL RESOURCE COUNCIL OF THE DIVISION OF MARINE SERVICES OF THE DEPARTMENT OF ENVIRONMENTAL PROTECTION, DEFENDANTS-RESPONDENTS.
Superior Court of New Jersey, Appellate Division.
Argued January 28, 1974.
Reargued May 13, 1974.
Decided May 29, 1974.
*554 Before Judges COLLESTER, LYNCH and MICHELS.
Mr. Richard O. Venino argued the cause for appellant.
Mr. William C. Rindone, Jr., Deputy Attorney General, argued the cause for respondents (Mr. William F. Hyland, Attorney General of New Jersey, attorney; Mr. George F. Kugler, Jr., former Attorney General of New Jersey, and Mr. Rindone on the brief).
The opinion of the court was delivered by MICHELS, J.A.D.
This is an appeal from the approval by defendant Richard Sullivan, Commissioner of the Department of Environmental Protection, of a decision of the Natural Resource Council of the Division of Marine Services of said Department ("Council"), establishing the sum of $127,000 as the consideration to be paid by plaintiff Evelyn LeCompte for two riparian grants.
In 1968 plaintiff purchased a spit of land known as Dutchman's Point, in Brick Township, Ocean County, New Jersey. This land was to be improved and developed as Mantoloking Shores, Sections 7 and 8. The plans submitted by plaintiff to the Council indicate that she intended to bulkhead and fill the perimeter of Dutchman's Point thereby increasing its width, and creating sufficient land to subdivide into 34 building lots of approximately 85 x 160 feet each. The development *555 was divided into two sections. Separate applications were filed for each section, the first (No. 68-182) in June 1968 and the second (No. 69-24) in January 1969. Separate hearings were held on each application. The result of Council action in both cases was to establish a total consideration of $50,460.60 for both grants based upon a formula price of $15 a front foot for the frontage along Barnegat Bay and Long Island Cove.
It was customary, at that time, for the Natural Resource Council to rely on an informal procedure which, although it had no basis in statute, was available to all applicants. That procedure involved payment of one-half of the consideration specified by the Natural Resource Council in contemplation of a grant being made. Upon receipt of one-half of the consideration a permit would issue from the Division of Marine Services (or its predecessor in designation), which would permit the applicant to pursue the contemplated construction activities without waiting for the final issuance of the grant which could take some many months. In accordance with said procedure plaintiff paid $10,425 on account for No. 68-182 and $10,000 for No. 69-24 and received permits to bulkhead and fill only, in accordance with plans and specifications submitted with the application for the grant. These permits expressly provided:
The granting of this permit shall not be construed to in any way affect the title or ownership of property and shall not make the Department of Conservation and Economic Development, Division of Resource Development or the State a party to any suit or question of ownership of property.
The granting of this permit shall not affect any title the State or any municipality or county has or may have in any lands or property.
The granting of this permit shall not relieve the permittee from the necessity of his observing any and all laws and ordinances.
Plaintiff proceeded to bulkhead and fill the land. Thereafter, upon approval by the Planning Board of the Township of Brick, but prior to receiving the grants from the Council, plaintiff subdivided not only the upland previously owned, *556 but also the riparian land which was to be the subject of the two grants applied for, and sold eight of these lots. Water and sewer systems, roads, sidewalks, curbs and other improvements were made on the subdivided land. The remaining 26 lots have not been sold and remain in plaintiff's ownership. Of the eight lots sold, seven have structures erected thereon of a substantial nature and appear to be occupied by their respective owners.
In February 1969 Anthony C. Scoppetuolo, Supervisor of Grants and Leases, notified plaintiff's attorney by separate letters with respect to each application that the Council had voted to issue a grant based upon a rate of $15 a foot. Each letter provided:
After the prepared instrument is submitted for your approval, the grant must be forwarded to the Commissioner of the Department of Conservation and Economic Development, the Attorney General and the Governor for final review and approval as provided by law, before this grant is effective. It is essential to call to your attention that until these final approvals are forthcoming, the ownership of the property remains in the State. [Emphasis added]

* * * *
The Bureau has had many cases where the applicants have failed to acquire grants after same have been ready for delivery. You are therefore advised that the price set forth herein will remain in effect for one (1) year only.
In 1969 all riparian grants were delayed, reviewed as to sufficiency of purpose and consideration, and in appropriate cases, turned back for revision or disapproval. In this connection an appraisal of the instant property was made for the benefit of the Council. The appraisal indicated a net value of the subject unimproved property of $161,760.
Following receipt of this appraisal the Council revised upward the consideration for the two grants. Plaintiff and her attorney appeared before the Council and a compromise lump sum price of $85,000 was agreed upon for both grants. The grants were processed and submitted to the Office of the Attorney General preliminary to submission to the Governor for his approval, in accordance with N.J.S.A. 12:3-7.
*557 James R. Johnson, Supervisor of Riparian Section, Bureau of Marine Lands Management, wrote to plaintiff's attorney in May 1972 advising him of the new consideration for each grant. Each letter contained the following admonition: "until final approvals from the Authorized State Officials are obtained, and delivery is made, the State has not conveyed its title nor has it intended to convey its title."
Thereafter, the Attorney General again reviewed said grants and the substantiating data, and a determination was made that, in view of the appraisal showing a fair market value of approximately $161,760 for the subject property, the agreed consideration of $85,000 was inadequate, unacceptable and would not be acceded to by the Governor. Accordingly, the documents and files were returned to the Council with a recommendation that the consideration be reviewed and increased in light of the higher appraisal. In April 1973 the Council reconsidered the subject grants. After having heard the arguments of plaintiff's counsel and his submission, together with the recommendation of its staff and that of the Attorney General, the Council determined to establish a new total consideration in the amount of $127,000. This action, increasing the consideration, was approved by Commissioner Sullivan in May 1973, from which determination plaintiff appeals.

I
Respondents contend at the outset that the determination of the Council setting forth the consideration for the two riparian grants in the amount of $127,000, and the approval thereof by Commissioner Sullivan was not a final decision and therefore not appealable as of right pursuant to the provisions of R. 2:2-3(a). The thrust of the argument is that under express statutory authority the grants are not allowable except when approved and signed by the Governor. See N.J.S.A. 13:1B-13. While it is true that the riparian grants are not finalized until signed by the Governor, nevertheless, *558 the determination by the Council and the approval thereof by the Commissioner is not interlocutory within the intendment of R. 2:2-3(b). Such a determination constitutes a final decision within the purview of R. 2:2-3(a) (2) from which an appeal may be taken as a matter of right. Accordingly, respondents' motion to dismiss the appeal is denied.

II
Plaintiff's contention that the State is estopped from reconsidering the price to be paid for the grants is groundless. While our courts have indicated that the principle of estoppel may apply to the State in a proper case, O'Neill v. State Hwy. Dept., 50 N.J. 307, 319-320 (1967), it is clear that in the instant case the necessary elements of estoppel are not present. See Highway Trailer Co. v. Donna Motor Lines, Inc., 46 N.J. 442 (1966), where the court quotes from Pomeroy as follows:
"Equitable estoppel is the effect of the voluntary conduct of a party whereby he is absolutely precluded, both at law and in equity, from asserting rights which might perhaps have otherwise existed, either of property, of contract, or of remedy, as against another person, who has in good faith relied upon such conduct, and has been led thereby to change his position for the worse, and who on his part acquires some corresponding right, either of property, of contract, or of remedy." 3 Pomeroy's Equity Jurisprudence (5th ed. 1941) § 804. [at 449]
It is beyond dispute that plaintiff was advised on four separate occasions in writing by the state officials that the grants were not yet effective and, most importantly, that the price quoted would be in effect for one year only. Furthermore, the permits issued to plaintiff, which permitted only bulkheading and filling, expressly stated that the granting of the permit would not in any way affect the title or ownership of the property. Accordingly, plaintiff has failed to establish justified reliance which is essential to proof of equitable *559 estoppel. See Taylor v. Sullivan, 119 N.J. Super. 426 (App. Div. 1972), certif. den. 62 N.J. 70 (1972), where this court held that the State was not estopped to cancel a grant of riparian land before payment of the consideration. The court stated therein:
The situation here is not to be analogized with that of private vendor and vendee of lands. The statute does not contemplate an executory agreement between the State to sell and the upland owner to buy. Rather does it fix conditions for consummation of the grant, and an essential such condition prerequisite is payment of the consideration by the grantee. N.J.S.A. 12:3-6; 12:3-10. The specified consideration was here never paid, or even tendered, by appellant. Until payment and acceptance thereof the intrinsic intent of the statutory scheme is that the State's representatives are free to cancel the inchoate proposal.
The principle of estoppel does not apply here in law or in fact. See O'Neill v. State Hwy. Dept., 50 N.J. 307, 319 (1967). Discretion of the kind here reposed by the statute in the Commissioner and Governor is beyond judicial review. Id. at 315. [at 431]
With respect to the facts of the case, the court held (at 431) that [t]he element of substantial damage because of justified reliance * * * is here absent. (Emphasis added)
The fact that plaintiff paid part of the consideration initially required cannot operate to create an estoppel against the State in this case. Plaintiff made the partial payment with full knowledge that the grant was not effective, and that the price was not even guaranteed for more than one year. Cf. Taylor v. Sullivan, supra. Furthermore, the improvements that plaintiff made were made with full knowledge that she held a permit which allowed only bulkheading and filling, and that the permit that was issued expressly warned that the granting thereof would not affect the title of the State. Any improvements which plaintiff made were made solely at her own risk and with full knowledge of the circumstances then existing.

III
Plaintiff next argues in effect that she was deprived of constitutional due process by reason of the fact that she *560 was not afforded a hearing after it was determined that the consideration of $85,000 was inadequate and unacceptable and would not be acceded to by the Governor, and a new consideration of $127,000 was set for the proposed riparian grants. The apparent thrust of this argument is that N.J.S.A. 13:1B-13 is unconstitutional because it fails to provide for a "fair hearing" before final action is taken on the issuance or denial of a riparian grant. This argument is untenable. While it is fundamental that a person shall be secure in his property, and that it may not be taken from him without due process of law, it is equally fundamental that plaintiff does not have any property or other rights in riparian lands applied for until the grants have been issued in accordance with the applicable statutes. N.J.S.A. 13:1B-13 expressly provides that riparian grants are not effective "except when approved and signed by the Governor and the Commissioner * * *." A careful review of the statutes governing riparian grants establishes clearly that the Council is entrusted with complete discretion subject to approval of the Governor and the Commissioner in determining whether it will issue any grant, and, if so, at what price. Cf. Taylor v. Sullivan, supra at 430; Bailey v. Driscoll, 34 N.J. Super. 228, 253 (App. Div. 1955), aff'd in part and rev'd in part 19 N.J. 363 (1955). Consequently, plaintiff did not possess any right to the riparian lands for which she sought grants, and a fortiori she did not have a right to a hearing to contest the price set by the State to be paid for such grants. Therefore, N.J.S.A. 13:1B-13 is not unconstitutional, and plaintiff was not deprived of any constitutional right of due process. As a matter of fact, plaintiff was afforded two opportunities to be heard, and on each occasion she appeared and was represented by counsel and submitted material for consideration by the Council. To suggest that she should have been afforded an additional opportunity to be heard is totally lacking in merit.

*561 IV
Plaintiff's final contention that the calculation of the rate of compensation for the riparian grants she sought was unjust and discriminatory in that a disparity existed between the rate charged her and that charged to others similarly situated completely lacks merit.
N.J.S.A. 12:3-10 provides that the Board (now the Council, see N.J.S.A. 13:1D-1 and 3(b)) shall determine the compensation to be paid by any riparian owner on tidewater for a state grant. N.J.S.A. 12:3-16 provides with respect to the fixing of the purchase price that the Board (now the Council), together with the Governor, shall fix and determine within the limits prescribed by law the price or purchase money to be paid by any applicant for such riparian grants. The applicable limits, however, have not been prescribed by statute.
The Council in this case determined the consideration based upon the fair market value of the properties which we deem to be a proper method of evaluation. Cf. In re Camden, 1 N.J. Misc. 623, 639-641 (Sup. Ct. 1928). The method by which the appraiser reached his conclusion does not appear to be erroneous or contrary to the statutory scheme for evaluating riparian lands. Moreover, there is no merit in the argument that the appraisal based on fair market value should have been limited to the property in its unimproved state. The reliance by plaintiff on N.J.S.A. 13:1B-13.9, which provides that the Council is to determine fair market value of property in its unimproved state at the time of a conveyance, is misplaced.
N.J.S.A. 13:1B-13.9 does not apply to the valuation of grants for riparian lands issued pursuant to chapter 3 of Title 12. Rather, it applies solely to the evaluation of conveyances relating to meadowlands to which the State of New Jersey has made claim pursuant to the provisions of N.J.S.A. 13:1B-13.2 et seq. Obviously, with respect to such lands it would be entirely inequitable to determine the fair *562 market value of the property in its improved state. Tidal lands are entirely different. The riparian owner does not own nor does he claim ownership of the property for which he seeks the riparian grant, and the State must obtain the fair market value thereof for such a conveyance. Consequently, the grant should be evaluated on the basis of the fair market value of the property at the time of the conveyance whether or not improved.
Affirmed.