RAMON LeCOMPTE, PLAINTIFF-RESPONDENT, v. STATE OF NEW JERSEY; RICHARD J. SULLIVAN, COMMISSIONER OF THE DEPARTMENT OF ENVIRONMENTAL PROTECTION, *ET AL*, DEFENDANTS-APPELLANTS.

Argued May 7, 1974—Decided August 6, 1974.

448

*Mr. William C. Rindone, Jr.,* Deputy Attorney General, argued the cause for defendants-appellants (*Mr. George F. Kugler, Jr.,* Attorney General of New Jersey, attorney; *Mr. Rindone,* of counsel and on the brief).

*Mr. Richard O. Venino* argued the cause for plaintiff-respondent.

The opinion of the Court was delivered by

MOUNTAIN, J. Plaintiff submitted several applications to the Natural Resource Council in the Department of Environmental Protection, apparently pursuant to *N. J. S. A.* 12:3–10, to purchase certain riparian lands from the State. The properties sought to be acquired, described as six separate lots, are located within Long Island Cove, an arm of Barnegat Bay, Brick Township, Ocean County. The applications were filed following the discovery by State officials that plaintiff had in fact already encroached upon the State lands in question, while developing adjoining upland for resale. The Natural Resource Council gave tentative approval to plaintiff's application, fixed the compensation to be paid, and imposed, with respect to each lot, a so-called "use and occupancy assessment," which plaintiff was also required to pay before the State would convey title.

In order to test the validity of these "assessments," plaintiff instituted this declaratory judgment action in the Chancery Division of the Superior Court. Defendant answered, generally contesting all claims advanced by plaintiff, and also filed a counterclaim, setting forth a demand for damages arising from plaintiff's alleged trespass and seeking an order compelling plaintiff to vacate the tidelands and restore them to their former condition. Defendant moved for summary judgment and affidavits were filed by both parties. While this motion was pending, the Chancery Division judge entered an order, *sua sponte,* transferring plaintiff's suit to the Appellate Division, but retaining jurisdiction of defendant's counterclaim. The order of transfer stated that

it was entered pursuant to *R.* 2:2–3(a)(2), which provides that "appeals may be taken to the Appellate Division as of right . . . (2) to review final decisions or actions of any state administrative agency. . . ." The Appellate Division determined that the Natural Resource Council was without authority to impose use and occupancy assessments and remanded the matter to the Chancery Division for further proceedings. 128 *N. J. Super.* 552 (1973). We granted the defendant's petition for certification. 64 *N. J.* 496 (1974).

The only issue presented for determination is whether the Natural Resource Council, acting on behalf of the State of New Jersey, may require, in addition to a stated consideration for sale of riparian lands, the payment of a further sum of money, here referred to as a use and occupancy assessment. Admittedly the "assessment" is intended to compensate the State for the use and occupancy of its lands by one who has been trespassing. The Appellate Division resolved this issue in favor of plaintiff, basing its decision upon the conclusion that no statute specifically grants authority to the Council to impose use and occupancy assessments. For the reasons set forth below we reach a different result.

 No one disputes the proposition that tidal lands, lying between mean high and low water marks, are owned by the State, to the extent they have not been validly conveyed to others. *Bailey v. Driscoll,* 19 *N. J.* 363, 367 (1955); *Ross v. Mayor, etc., of Borough of Edgewater,* 115 *N. J. L.* 477, 483 (Sup. Ct. 1934), aff'd 116 *N. J. L.* 447 (E. & A. 1936), *cert.* den. 299 *U. S.* 543, 57 *S. Ct.* 37, 81 *L. Ed.* 400 (1936); *Schultz v. Wilson,* 44 *N. J. Super.* 591, 596 (App. Div. 1957), *certif.* den. 24 *N. J.* 546 (1957). As the holder of such title the State possesses all attributes of ownership, including the right, subject to the demands of the public trust doctrine, to grant or alien the lands so held.[1] In

---

[1]As to the public trust doctrine, see *Borough of Neptune v. Borough of Avon-by-the-Sea,* 61 *N. J.* 296, 303–311 (1972) and authori-

large measure the responsibility of overseeing and controlling tidelands has been allocated by the Legislature to the Department of Environmental Protection. Within that Department the Natural Resource Council has been empowered to negotiate leases and conveyances on behalf of the State. *N. J. S. A.* 12:3–7; 12:3–10; 13:1B–13; 13:1D–3(b). The Council is given the right to fix such price or compensation as it shall see fit as consideration for any such lease or conveyance. *Id.*

In addition, the Department of Environmental Protection is authorized to institute civil actions in the name of the State of New Jersey against persons trespassing upon or occupying tidelands of the State. *N. J. S. A.* 12:3–8. It is also empowered to bring actions to prevent encroachments or trespasses upon riparian lands and to "compel the removal of any such encroachment or trespass." *N. J. S. A.* 12:5–2.

Finally, it is important to bear in mind that the State is under no obligation to convey riparian lands when requested to do so, but may, if it sees fit, simply continue to retain title.

In the instant case the realities of the proposed transaction have been somewhat obscured by the rather unfortunate nomenclature employed. To say, as the State rather incautiously has done, that it is levying a use and occupancy assessment is strongly to suggest that some form of governmental charge or duty is being imposed by the Natural Resource Council. The Council has no discernible right to impose any such charge. The matter may, however, be viewed in a quite different light. We are not slaves to semantics. What the State has in fact done, acting through its designated agency, is to fix a total purchase price en-

ties there cited. The present case is obviously not an appropriate vehicle to consider further the question as to what restrictions and limitations, if any, are placed upon the State's freedom to alienate tidelands by virtue of this doctrine. We look forward to an early opportunity to consider this important issue comprehensively.

compassing the reasonable value of the riparian lands together with a sum deemed proper compensation for the use and occupancy of the property during the period of the trespass or purpresture. The latter charge is thus seen as no more than an ingredient of the purchase price.[2]

██ ██ Clearly the State has broad power in determining the consideration for a grant of riparian lands.[3] In addition, as set forth above, the Legislature has specifically provided for an action in trespass to recover compensation against a wrongdoer for the improper occupancy of tidelands. *N. J. S. A.* 12:3–8. By so doing it clearly intended that damages of this sort might be recovered, and doubtless that the threat of such action would have an *in terrorem* effect upon likely trespassers. Viewing this apparent legislative intent in conjunction with the very broad grant to fix compensation, discussed above, we see no reason why the course here followed should not be deemed well within the statutory authorization. There is no charge that the State has acted unreasonably or arbitrarily.

If the plaintiff is dissatisfied with the proposed consideration, he need go no further with the purchase; nor is the State in any way obliged to consummate the sale. *Taylor v. Sullivan, supra.* Also, the State remains free to press

---

[2]This analysis comports with that of the Natural Resource Council, as demonstrated by the affidavit of Richard D. Goodenough, Director of the Division of Marine Services in the Department of Environmental Protection, filed in support of the State's motion for summary judgment made in the Chancery Division, which included the following statement:

The Council, in approving each of the above applications for a riparian grant, deemed the use and occupancy fee an integral part of the consideration for the grant and, having determined to impose such use and occupancy fee, would not have authorized such grants without the payment of same.

[3]It has been suggested that State action, taken pursuant to this statutory authorization, is beyond judicial review. *Taylor v. Sullivan,* 119 *N. J. Super.* 426, 431 (App. Div. 1972), citing *O'Neill v. State Highway Dept.,* 50 *N. J.* 307, 319 (1967). We are not here called upon to resolve this ultimate issue.

its claims for damages arising out of the alleged trespass and for specific restoration of the property to its earlier conditon, each of which is set forth in its pending counter-claim.

The statutory powers which we have discussed above are, when taken in the aggregate, amply sufficient to support what has been done here.

The judgment of the Appellate Division is reversed and the case is remanded to the Chancery Division for further proceedings consistent with this opinion.

*For reversal and remandment*—Chief Justice HUGHES, and Justices JACOBS, MOUNTAIN, SULLIVAN, PASHMAN and CLIFFORD—6.

*For affirmance*—None.