145 N.J. Super. 438 (1976)
368 A.2d 366
ATLANTIC CITY ELECTRIC COMPANY, A CORPORATION OF THE STATE OF NEW JERSEY, APPELLANT,
v.
DAVID A. BARDIN, COMMISSIONER OF THE DEPARTMENT OF ENVIRONMENTAL PROTECTION OF THE STATE OF NEW JERSEY: THE DEPARTMENT OF ENVIRONMENTAL PROTECTION; THE NATURAL RESOURCE COUNCIL OF THE DIVISION OF MARINE SERVICES OF THE DEPARTMENT OF ENVIRONMENTAL PROTECTION, RESPONDENTS.
Superior Court of New Jersey, Appellate Division.
Argued October 18, 1976.
Decided December 14, 1976.
*440 Before Judges CARTON, KOLE and LARNER.
*441 Mr. Henry P. Megargee, Jr. argued the cause for appellant (Messrs. Lloyd, Megargee & Steedle, attorneys).
Mr. Arnold Lakind, Deputy Attorney General, argued the cause for respondents (Mr. William F. Hyland, Attorney General of New Jersey, attorney; Mr. Stephen Skillman, Assistant Attorney General, of counsel).
The opinion of the court was delivered by CARTON, P.J.A.D.
Atlantic City Electric Company (Electric) appeals a determination of the Natural Resource Council of the Division of Marine Services of the Department of Environmental Protection (Council) to offer it a revocable license to lay submarine cable beneath the tideland waters of Great Egg Harbor Bay on condition that Electric pay a consideration of $40,851.
Electric is a public utility supplying electric energy throughout the southern part of the State. The Council is the administrative body charged with supervision over New Jersey's tidelands.
On January 13, 1975 Electric filed an application with the Council for a permit to install a 23,000-volt submarine cable and offered to pay a $2,000 permit fee based on estimated construction costs of $400,000. The proposed installation would extend across Great Egg Harbor between Ocean City and Upper Township, a distance of approximately 15,000 feet. Electric also filed an application for a revocable license to use and occupy the State's underwater land for the installation of the cable.
On March 5, 1975 the Council authorized the issuance of both the construction and the revocable license. The consideration for the issuance of the license was fixed at $40,851, computed in accordance with a fee schedule of $3 a lineal foot, adopted by the Council on March 14, 1974. In 1968 the fee had been set at $2 a lineal foot with a maximum of $5,000. The stipulation for a maximum charge was eliminated in the 1974 revision.
*442 Following correspondence between the parties the applicant petitioned the Council for reconsideration of the license charges. The proposed charge for the construction permit was not contested. A hearing was held at which the applicant appeared through counsel, after which the Council voted to reaffirm its fee schedule and specifically the license fee of $40,851. No transcript was taken of what transpired at the hearing.
Appellant challenges the Council's determination on the grounds that the Council lacks power to issue revocable licenses; that there are no legislative standards or guidelines under which it operates, and that the fees imposed by it in this case are unreasonable, arbitrary and capricious. It also contends that the imposition of fees in effect constitutes a revenue-producing measure prohibited by N.J.S.A. 54:30A-49, and that the Council's action is invalid for failure to comply with the provisions of the Administrative Procedure Act (N.J.S.A. 52:14B-1 et seq.).
Although responding to each of these contentions specifically, the Council's basic position is that its action in this case constituted a proprietary function which is not subject to judicial review. Consideration of the issues thus raised requires a brief reference to the relevant statutory scheme and the cases interpreting it.
It is undisputed that the State is vested with absolute ownership of submerged lands within its boundaries to the extent that such lands have not been previously conveyed to others. In large measure, responsibility for overseeing and controlling tidelands has been delegated by the Legislature to what is now the Department of Environmental Protection. Within that Department the Natural Resource Council, formerly the Resource Development Council and the Planning and Development Council, has been authorized to negotiate leases and conveyances on behalf of the State. See N.J.S.A. 12:3-7, 12:3-9, 12:3-10, 12:3-16, 12:3-26 and 13:1B-13. See also, Bailey v. Driscoll, 19 N.J. 363 *443 (1955), which contains a comprehensive review of the legislative history of these provisions.
Three relatively recent decisions have construed the statutory scheme dealing with the State's tidelands. In Taylor v. Sullivan, 119 N.J. Super. 426 (App. Div. 1972), certif. den. 62 N.J. 70 (1972), this court held that the Commissioner of Environmental Protection had absolute discretion to cancel and revoke, prior to the payment by the grantee and actual delivery of a deed, a prior fully implemented resolution to grant a riparian interest to an upland owner. In Taylor the court said:
* * * [A]ction or inaction by the designated agencies and officers of the State in respect of grants of its riparian interests is not reviewable in terms of alleged abuse of discretion but solely on the basis of whether their action is within or without the bounds of the pertinent statutory limitations. [Bailey v. Driscoll, 34 N.J. Super. 228, 253 (App. Div. 1955), aff'd in part and rev'd in part, 19 N.J. 363 (1955)]. "Of course, the Council is entrusted with complete discretion as to whether it will convey anything and, if so, at what price * * *." Ibid. * * * These statutory requirements evidence that in the administration of this subject matter the State's proprietary interest is involved and the designated officers exercise the proprietor's absolute discretion, subject only to the limitations stated in the controlling statutes, to convey or not, and on such terms as the Council and they may choose. Bailey v. Driscoll, supra, 34 N.J. Super. at 252-253. [119 N.J. Super. at 430-31]
In LeCompte v. State, 128 N.J. Super. 552 (App. Div. 1974), certif. den., 66 N.J. 321 (1974), the court held that since the Legislature had entrusted the Council with complete discretion, subject to approval of the Governor and the Commissioner, in determining whether it would issue any grant and, if so, at what price, the applicant for a riparian grant was not entitled as a matter of right to acquire the riparian grant requested or to a hearing to contest the price set by the State to be paid for such grant. In LeCompte v. State, 65 N.J. 447 (1974), a related but different case from the case just referred to, state officials discovered, after plaintiff had submitted several applications to the Council to purchase riparian lands, that plaintiff had *444 already encroached upon them in the course of developing adjoining uplands for resale. The Council, in tentatively approving the applications, fixed the compensation to be paid and imposed a "use and occupancy assessment" for the period during which plaintiff had encroached upon the state lands.
The Supreme Court upheld the action of the Council, pointing out that the State, as holder of title to tidal lands, possesses all attributes of ownership, including the right subject to the demands of the public trust doctrine, to grant or alien the lands held and has broad power to determine the consideration for the grant. It then held that the Natural Resource Council, as the agency empowered to negotiate leases and conveyances, was given the right "to fix such price or compensation as it shall see fit as consideration for any such lease or conveyance." 65 N.J. at 451. However, it refrained from determining whether the State's action was beyond all judicial review.
In light of the statutory provisions and the decisions referred to above interpreting them, we conclude that there is no merit to any of appellant's attacks on the power of the Council to issue revocable licenses and to fix fees therefor.
Contrary to appellant's contention, the State does possess power to grant a revocable license since it possesses all incidents of ownership to riparian lands and has complete discretion to convey an interest therein and determine a consideration therefor. By necessary implication, it also has the lesser power of granting licenses, revocable or otherwise, and fixing the amount to be charged for such license.
We are also satisfied that the statutory provisions relating to leases, grants and conveyances of tidelands (N.J.S.A. 12:3-1 et seq.) provide sufficient standards to guide the Council in the exercise of its wide discretionary powers. The Council, for over a century, has been responsible for the administration of the State's tideland interests. During this long history the Legislature has not provided any detailed *445 statutory guidance. The absence of highly articulated standards reflects legislative recognition of the need for broad delegations to agencies exercising proprietary functions which involve price determinations.
Courts have generally held that broad discretionary powers may be delegated to agencies engaged in such proprietary tasks. 1 Cooper, State Administrative Law (1965). The courts of this State have already noted the absence of standards in statutes concerning conveyances of tidelands. See LeCompte v. State, 128 N.J. Super. 552, 561 (App. Div. 1974), certif. den., 66 N.J. 321 (1974). A determination of the adequacy of standards cannot be made in the abstract. Consideration must be given to the nature of the subject matter regulated. See Lane v. Holderman, 23 N.J. 304, 319 (1957). In our view, price determinations, by their very nature, are not readily amenable to definite legislative standards because the legislative action is distant from day-to-day administrative decisions. Cf. Como Farms, Inc. v. Foran, 6 N.J. Super. 306 (App. Div. 1950).
The Natural Resource Council may not, of course, exercise unfettered discretion in tideland transactions. N.J. Const. (1947), Art. VIII, § 4, par. 2, establishes a perpetual trust denominating the fund for the support of free public schools. All tide-flowed lands are dedicated to the support of this fund and monies received from their conveyance must become part of the fund. N.J.S.A. 18A:56-5 and 6. Courts have utilized these provisions in limiting the scope of the Council's discretion. Henderson v. Atlantic City, 64 N.J. Eq. 583 (Ch. 1903); see also, Garrett v. State, 118 N.J. Super. 594, 599 (Ch. 1972).
State proprietary activity in the sale of State-owned property, in contrast to regulatory activity, need not be the subject of detailed statutory standards. Where, as here, the agency activity involves a determination of an offering price for state-owned property, the fiduciary obligations created by the Constitution and the statutory provisions contain sufficient guidance. In activities of this nature the Legislature *446 cannot be expected to provide more than a general statement of objectives.
We do not perceive any merit to the contention that the imposition of a charge by the State for the conveyance of an interest in tidelands constitutes a tax violative of N.J.S.A. 54:30A-49 et seq. That statute is designed to create a comprehensive system for the taxation of public utilities. The act declares, among other things, that utilities "shall be subject to taxation only as in this act provided * * *." N.J.S.A. 54:30A-51.
The fee charged for the acquisition of a revocable license of this kind represents a contractual consideration for an interest in land. It constitutes an exchange of money for a tangible and specific property interest. It is not a levy for the general support of government, and it is not a tax simply because it originates from a requirement imposed by the government. Accordingly, N.J.S.A. 54:30A-49 does not apply.
With respect to Electric's challenge to the reasonableness of the charge in the present case, we need only point out that the Council, with the approval of the Commissioner and the Governor, is granted wide discretion in fixing reasonable compensation within the limits prescribed by law. As long as the Council does not attempt to convey property so far below a fair value that the conveyance impairs the assets for the support of public schools, it may exercise broad discretion in making conveyances or granting licenses and in determining the consideration appropriate for such transfers. Whether there could exist any set of circumstances justifying interference by the court with the Council's action in offering to make a particular grant or issue a particular license, we need not decide. Suffice it to say that there is nothing in the record in the present case to support the contention that the Council acted beyond the scope of the powers vested in it or exercised them in an arbitrary or illegal manner.
Appellant also argues that the Council's failure to comply with the Administrative Procedure Act (N.J.S.A. 52:14B-1 *447 et seq.) requires a vacation of the fee schedule adopted by it and a remand to have the Council promulgate the schedule on notice and in accordance with the various requirements of that act.
The Council does not dispute the allegation of noncompliance with these requirements, but maintains that the act is inapplicable to the action challenged in this case. We agree. By its terms, the notice and hearing provisions of the act relied on by Electric, N.J.S.A. 52:14B-4(a), are applicable only to actions of a state agency which constitute an exercise of its rule-making functions. N.J.S.A. 52:14B-2(e) defines an "administrative rule" or "rule" in this context as an "agency statement of general applicability and continuing effect that implements or interprets law or policy, or describes the organization, procedure or practice requirements of any agency."
In our view, the action of the Council in this case in fixing the consideration for the grant of the license does not constitute an exercise of the rule-making function of the agency as that function is described in the statute just referred to. The schedule of fees was set by internal resolution, not by an administrative rule of general application. The determination fixing the amount of the consideration or license does not appear to be an implementation or interpretation of a statute, nor a description of the organization, procedure or practice requirements of the Council. Rather, it impresses us as the exercise of a business judgment. Whether the amount of the consideration is determined separately for each application or by uniform fee, as was done in this case, would not seem to change the nature of the action.
Consequently, we hold that such an act does not require compliance with the notice and hearing procedure required by the act for the promulgation of an administrative rule. Cf. Avant v. Clifford, 67 N.J. 496 (1975).
In view of this determination we find it unnecessary to consider the Council's further contention that it is not a "state agency" as that term is defined in N.J.S.A. 52:14B-2, *448 and therefore exempt from any of the requirements of the Administrative Procedure Act.
Affirmed.